United States Court of Appeals,

Eleventh Circuit.

No. 94-8188.

Beverly TISDALE, as natural parent and legal custodian for Christopher Tisdale-Lugo, a minor, Plaintiff-Appellant,

v.

UNITED STATES of America;  Coleman Realty Company;  Joel K. Coleman dba Coleman Realty Co., Defendants-Appellees.

Sept. 6, 1995.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:92-002868-CV-ODE), Orinda D. Evans, Judge.

Before COX, Circuit Judge, RONEY and WOOD[*], Jr., Senior Circuit Judges.

HARLINGTON WOOD, JR., Senior Circuit Judge:

Beverly Tisdale appeals the decision of the district court granting the United States' motion for summary judgment.  Ms. Tisdale filed suit against the United States under the Federal Tort Claims Act after her ten year-old son, Christopher Tisdale-Lugo, was injured at a property owned by the Department of Housing and Urban Development ("HUD") when a metal staircase collapsed beneath him.  Ms. Tisdale filed suit against the Coleman Realty Company ("Coleman"), which had contracted with HUD to maintain the property, pursuant to 28 U.S.C. § 1367.  The district court granted the United States' motion for summary judgment after concluding that the United States was not liable for any negligence committed by Coleman as Coleman was an independent contractor under federal law.  The district court also found that the United States could

[*]Honorable Harlington Wood, Jr., U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

not be found liable as a landowner under Georgia law for the unsafe condition of the property as it had surrendered possession and control of the property to Coleman. The district court last found that no genuine issue of material fact existed regarding whether the United States was liable for negligently supervising Coleman. For the reasons given below, we affirm the decision of the district court to grant the United States' motion for summary judgment.

## I. BACKGROUND

The facts of this case are relatively straightforward. On February 7, 1990, Beverly Tisdale visited a residential property located at 1380 McPherson Avenue in Atlanta, Georgia. Ms. Tisdale was accompanied by her ten year-old son, Christopher Tisdale-Lugo, and by her mother, Laverne Tisdale (collectively, "the Tisdales"). The dwelling was owned by HUD and had been advertised for sale by HUD in a local newspaper. The purpose of the Tisdales' visit was to inspect the property in contemplation of a possible purchase. Shortly after their arrival at the house, Christopher climbed a metal, exterior staircase located at the rear of the dwelling. After he had reached the landing at the top of the stairs, the staircase collapsed and Christopher fell to the ground, breaking his left ankle. It was later determined that the staircase's collapse was due to the extensive rusting of its supports.

HUD had acquired the dwelling on August 5, 1987, by special warranty deed from Lomas and Nettleton Company. On September 29, 1989, HUD entered into an Area Management Broker contract ("AMB contract") with Coleman which included the McPherson Avenue property. Under an AMB contract, a real estate broker or other

qualified individual agrees to arrange for and supervise the management, rehabilitation, and maintenance of certain properties that have been acquired by HUD. As an Area Management Broker ("AMB"), Coleman was additionally required to inspect the properties covered by the AMB contract on a regular basis and to eliminate any safety hazards that the inspections revealed.[1] In

---

[1] More specifically, as stated by the district court, the AMB contract required Coleman to:

> (1) post warning signs; (2) notify police, taxing authorities, utility companies, and owner's associations of HUD's interest in the property; (3) notify HUD of damage due to vandalism, fire, and other causes; (4) remove and dispose of interior and exterior trash; (5) secure property to prevent unauthorized entry and damage by elements; (6) winterize operating systems and equipment; (7) order termite and other pest control inspections; (8) eliminate conditions which present safety hazards within five days of assignment of property and thereafter as required; (9) complete and provide HUD with lead based paint hazard report; (10) assume responsibility for keys and/or lock boxes; (11) ensure that grass and shrubbery are cut/trimmed, clippings are removed, and snow is removed from walkways and sidewalks; (12) obtain tax and special assessment bills and forward to HUD for processing/payment; (13) complete form HUD-9516 (Property Disposition Listing Report) and provide to HUD; (14) provide listing of needed repairs, with cost estimates; (15) solicit bids for repairs; (16) inspect completed repairs and ensure that repair contract is properly fulfilled; (17) post HUD "For Sale" sign; (18) routinely inspect properties and document such inspections with HUD inspection Report (9519 or 9519a) every 15 days after initial inspection; (19) determine fair market rental rate; (20) execute month-to-month leases; (21) collect and deposit rent; (22) investigate tenant complaints and provide recommendations to HUD; (23) initiate and administer eviction actions; (24) have operating systems tested and furnish report of condition to HUD; (25) provide assistance to interested parties regarding properties available for sale; (26) provide transportation to HUD representative for property inspections no more than once a month (randomly selected properties); and (27) monitor, inspect, and approve lawn maintenance contractor for area.

this regard, Coleman was authorized to make any necessary repairs up to $1000, but any repairs that were in excess of this amount required prior authorization from HUD.

Other responsibilities held by HUD under the AMB contract included: (1) placing advertisements in an attempt to sell the properties; (2) determining the sales disposition of a property—e.g., the asking price of the property, whether it was to be sold "as is," and whether it was to be sold with or without insurance; (3) reassessing the property every thirty days if it remained unsold and determining whether to authorize further repairs; (4) deciding whether the property should be rented and setting the rental rate; (5) determining whether an eviction proceeding should be commenced regarding those properties that were rented; and (6) ensuring that its AMB's complied with the terms of the AMB contracts—this included the review of all documents submitted by the AMB's and the inspection of at least ten percent of the properties assigned to each AMB.

On January 31, 1992, Ms. Tisdale filed suit against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* Jurisdiction for the action exists by virtue of 28 U.S.C. § 1346(b). Ms. Tisdale also filed suit against Coleman pursuant to 28 U.S.C. § 1367. Ms. Tisdale later filed an amended complaint on June 25, 1992, and she filed a second amended complaint on September 15, 1993. On April 3, 1992, the United States filed a motion to dismiss the action for lack of subject matter jurisdiction; the district court denied this motion on September 29, 1992.

In addition, the United States filed a motion for summary judgment on August 10, 1993. The district court granted the motion for summary judgment on November 17, 1993, after finding that the United States was not liable for the negligence of Coleman, as Coleman was an independent contractor and not an employee of the United States. The district court further found that the United States owed no duty of care to the Tisdales as the owner of the property as it had relinquished possession and control of the McPherson Avenue property, via the AMB contract, to Coleman. The district court also rejected Ms. Tisdale's argument that the United States was liable for negligently supervising the performance of Coleman. On January 14, 1994, the district court also dismissed the claims against Coleman, without prejudice, for lack of jurisdiction. This appeal followed.

## II. STANDARD OF REVIEW

We review the district court's grant of a motion for summary judgment by determining *de novo* whether there exists a genuine issue as to any material fact requiring submission of the case to the finder of fact or whether judgment as a matter of law was appropriate. Fed.R.Civ.P. 56(c); *Sammons v. Taylor,* 967 F.2d 1533, 1538 (11th Cir.1992) (citations omitted). In making this determination, we view all evidence in the light most favorable to the non-moving party. *Sammons,* 967 F.2d at 1538 (citation omitted). The conclusions of law reached by the district court in this regard are reviewed *de novo,* as are all conclusions of law raised on appeal. *Morrison v. Washington County, Ala.,* 700 F.2d 678, 682 (11th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78

L.Ed.2d 171 (1983).

## III. DISCUSSION

### A. Independent Contractor Status

Ms. Tisdale brought this suit under the FTCA which provides a limited waiver of sovereign immunity for actions against the United States involving

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The United States argues, and the district court agreed, that the United States is not liable for the acts or omissions of Coleman under the FTCA because Coleman is an independent contractor, and not an employee or agency of the United States.

Suits under the FTCA are limited to those which involve claims arising from "the negligent or wrongful act or omission of any employee of the Government ... acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The FTCA specifically excludes "any contractor with the United States" from its coverage. 28 U.S.C. § 2671. Thus, the United States is not liable for the acts or omissions of the independent contractors that it employs. *See United States v. Orleans,* 425 U.S. 807, 813-16, 96 S.Ct. 1971, 1975-77, 48 L.Ed.2d 390 (1976). Our review of this matter convinces us that the district court correctly concluded that Coleman held only the status of an independent contractor in regard to the McPherson Avenue property. Therefore, the United States is

not liable for any negligent acts that Coleman may have committed.

It is true, as Ms. Tisdale argues, that HUD retained the authority under the AMB contract to ensure that Coleman fulfilled its contractually-assumed obligations, but this fact does not necessarily convert Coleman into an employee or agency of the United States. "[B]y contract, the Government may fix specific and precise conditions to implement federal objectives. Although such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs ... into federal governmental acts." *Id.* at 816, 96 S.Ct. at 1976-77. (footnote and citations omitted). The true test for independent contractor status addresses the United States' power " "to control the detailed physical performance of the contractor,' " or, in other words, whether Coleman's "day-to-day operations are supervised by the Federal Government." *Id.* at 814, 815, 96 S.Ct. at 1976 (quoting *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973)) (footnote omitted).

We find that Coleman is an independent contractor because the very purpose of an AMB contract is to turn over the day-to-day management, rehabilitation, and supervision of certain properties to AMB's such as Coleman. HUD's primary objective is to dispose of the properties covered by the AMB contracts; HUD owns far too many of these properties, and it is too insufficiently staffed to properly manage all of them itself. Therefore, HUD must enter into AMB contracts in order to facilitate its objective of disposing of these properties. The extensive list of duties assumed by Coleman under the AMB contract, recounted in footnote 1, *supra,* illustrates

the extent to which HUD relinquished its day-to-day duties to Coleman. Those responsibilities that HUD did retain—e.g., determining the asking price for the property, authorizing repairs over $1000, reassessing the property every thirty days, and deciding whether to rent the property—cannot be characterized as "day-to-day" duties.

*B. Landowner's Duty Under O.C.G.A. § 51-3-1*

Our determination that Coleman is an independent contractor means only that the United States is not directly or vicariously liable for any negligent or wrongful acts or omissions that Coleman may have committed. The United States can still, of course, be found liable for any tortious conduct committed by HUD. The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. As the allegedly negligent act or omission at issue here occurred in Georgia, we now turn to that state's laws.

The applicable statute, O.C.G.A. § 51-3-1, states:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose,[2] he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

Therefore, the United States *qua* landowner may be liable to the Tisdales under § 51-3-1 if the McPherson Avenue property was in an unsafe condition. It has been previously determined under Georgia

---

[2]The Tisdales visited the McPherson Avenue property in response to an advertisement placed by HUD—it is not disputed that they were invitees.

law, however, that a landowner may relinquish possession and control of his property to an independent contractor and thereby be relieved of his duties to those who enter his property. *E.g., Hodge v. United States,* 310 F.Supp. 1090, 1098 (M.D.Ga.1969), *aff'd,* 424 F.2d 545 (5th Cir.1970); *Towles v. Cox,* 181 Ga.App. 194, 195, 351 S.E.2d 718, 720 (Ga.Ct.App.1986). Upon the landowner's delivery of possession and control of the property to an independent contractor, "[t]he contractor then becomes the "occupier' of the land within the meaning of the Georgia statute." *Hodge,* 310 F.Supp. at 1098 (citing *Tyler v. Peel Corp.,* 371 F.2d 788, 790 (5th Cir.1967)). As the "occupier" of the land within the meaning of O.C.G.A. § 51-3-1, the independent contractor thereby becomes potentially liable, in the landowner's stead, to invitees for damages caused by the unsafe condition of the premises.

Our review of this record convinces us that the United States had turned over possession and control of the McPherson Avenue property to Coleman. "Possession may be defined as having personal charge of or exercising the rights of management or control over the property in question. Custody and control are the commonly accepted and generally understood incidents of possession." *Hodge,* 310 F.Supp. at 1098. The AMB contract at issue here specifically conferred managerial authority upon Coleman. As discussed above, Coleman was entrusted with the day-to-day decision-making regarding the McPherson Avenue Property.[3] That HUD retained the authority to

---

[3]Ms. Tisdale notes in this regard that HUD contracted with a different company for the maintenance of the lawn. Apparently, her reason for doing so is to demonstrate that the United States did not fully relinquish possession and control of the property to Coleman since another company was responsible for maintaining

ensure that Coleman was performing its obligations under the AMB contract is not sufficient, standing alone, to defeat the finding that Coleman was in possession and control of the McPherson Avenue property.[4] *See id.* at 1099 (finding that an independent contractor had possession and control over the portion of the roof under repair despite the fact that government inspectors visited the roof in order to see that contract specifications were being met). Therefore, the United States owed no duty to the Tisdales as a landowner under § 51-3-1 at the time of Christopher's unfortunate accident. Since the United States did not owe the Tisdales a duty under Georgia law here, the United States cannot be found liable for Christopher's injury. *E.g., Ramey v. E.S. Pritchett,* 90 Ga.App. 745, 750-51, 84 S.E.2d 305, 310 (Ga.Ct.App.1954).

*C. Nondelegable Duty*

Ms. Tisdale also argues that the duty imposed upon owners and occupiers of land under O.C.G.A. § 51-3-1 is nondelegable and that the United States is therefore unable to escape liability for the allegedly hazardous condition of the McPherson Avenue property. However, the duty held by landowners to invitees under Georgia law

---

the lawn. It is indisputable under Georgia law, however, that a landowner may relinquish possession and control of only a portion of his or her property to an independent contractor. *See, e.g., Hodge,* 310 F.Supp. at 1098-99 (listing cases); *Towles,* 181 Ga.App. at 195-96, 351 S.E.2d at 720. The possible presence of another independent contractor at the McPherson Avenue property does not concern our inquiry since Coleman clearly had charge of the portion of the property in question here—the rear, exterior staircase.

[4]Moreover, Ms. Tisdale admitted in all three versions of her complaint that "Defendant Coleman, by virtue of its contract with HUD, was the occupier of said property. Defendant Coleman was in possession and control of the aforementioned property."

remains nondelegable only for so long as the landowner retains possession and control of the property. Once a landowner has surrendered possession and control to an independent contractor, the bar on delegation evaporates. *See Englehart v. OKI Am., Inc.,* 209 Ga.App. 151, 153, 433 S.E.2d 331, 334 (Ga.Ct.App.1993) ("[I]t is the longstanding rule in Georgia that a property owner can delegate the responsibility of maintaining a safe workplace by relinquishing possession and control of the property to an independent contractor.") (listing cases).

As discussed above, we agree with the district court's finding that the United States did relinquish possession and control of the McPherson Avenue property to Coleman. Coleman thus became the occupier of the property and thereby assumed the nondelegable duty under Georgia law to exercise ordinary care to keep the property safe.[5] Therefore, the United States may not be found liable for the allegedly hazardous condition of the property.

*D. Negligent Supervision*

Ms. Tisdale last argues that the United States may be found liable under the FTCA for the negligence of HUD officials in failing to properly supervise Coleman under the AMB contract. As the district court correctly noted, Ms. Tisdale's position is not without support: "Although the [FTCA] precludes federal liability

---

[5]Moreover, the AMB contract explicitly delegated the responsibility for maintaining the safety of the property to Coleman. Among other duties, Coleman was to: (1) inspect the property and eliminate safety hazards within five days of signing the AMB contract; (2) routinely inspect the property every fifteen days thereafter; (3) post any needed warning signs; and (4) inspect completed repairs to ensure that they were completed correctly.

for the torts of an independent contractor, ... the employment of an independent contractor does not necessarily insulate the United States from liability for its own employees' independent acts of negligence which occur in connection with the work of an independent contractor." *Berman v. United States,* 572 F.Supp. 1486, 1491 (N.D.Ga.1983) (citations omitted)*; see also Logue v. United States,* 412 U.S. 521, 532-33, 93 S.Ct. 2215, 2221-22, 37 L.Ed.2d 121 (1973). Our review of this matter ultimately convinces us, however, that no genuine issue of material fact exists regarding whether the United States was negligent in its supervision of Coleman.

As discussed above, Coleman was required, under the AMB contract, to inspect the McPherson Avenue property every fifteen days and to complete an inspection report form after each inspection. The record indicates that Coleman did not file any inspection report forms with HUD until August 1990—nearly one year after its contractual relationship with HUD had begun. Viewing this fact in the light most favorable to Ms. Tisdale, it would seem to follow that a lack of documentation implies a lack of inspections. Carrying this supposition one step further, it was, or should have been, foreseeable to HUD officials that a lack of inspections created a potential risk to those persons who visited the property in response to HUD's advertisements.

There is evidence in the record, however, that Coleman did perform the required inspections: Mr. Coleman testified in his deposition that the required bi-monthly inspections were made during this period, but that he had not completed any inspection

reports because he had mistakenly believed that they were not required if no problems were discovered. In addition, a sign-in sheet kept at the McPherson Avenue property indicates that Coleman inspected the property on January 30, 1990, approximately one week before Christopher's accident.

Whether or not Coleman actually completed the reports is an issue of causation—it is not related to the initial inquiry into the United States' possible liability for failing to ascertain whether or not the inspections were performed. Causation issues should normally be addressed by the finder of fact under Georgia law: "Ordinarily, questions of negligence and diligence, cause and proximate cause are questions solely for consideration by the jury, and such questions should not be resolved as a matter of law except in plain and palpable cases." *Williams v. Nico Indus., Inc.,* 157 Ga.App. 814, 815, 278 S.E.2d 677, 680 (Ga.Ct.App.1981), *rev'd on other grounds, Malvarez v. Georgia Power Co.,* 250 Ga. 568, 300 S.E.2d 145 (Ga.1983). We find that the uncontroverted evidence which indicates that the inspections were actually performed makes the lack of causation "plain and palpable" in this case. The United States' failure to ensure that the safety inspections were performed did not play a role in Christopher's unfortunate accident since Coleman performed the inspections anyway. Therefore, we find that no material issue of fact exists regarding HUD's liability for negligently supervising Coleman.

## IV. CONCLUSION

For the reasons set forth above, the decision of the district court to grant the United States' motion for summary judgment is

affirmed.

AFFIRMED.