**Grant H. DANSKINE, et al., Plaintiffs,**

v.

**METRO DADE COUNTY FIRE DEPARTMENT, and Fire Chief R.D. Paulison, individually and officially, Defendants.**

**No. 97–2068–CIV.**

United States District Court, S.D. Florida.

July 23, 1999.

Jane Letwin, Law Office of Jane Letwin, Wilton Manor, Fl, John Chamblee, Law Offices of John Chamblee, Tampa, Fl, Neil Chonin, Chonin, Sher, Navarete, P.A., Coral Gables, Fl, for plaintiffs.

Lee Kraftchick, Asst. County Attorney, Miami, Fl, for defendants.

### ORDER ON THE PARTIES' CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

HIGHSMITH, District Judge.

THIS MATTER comes before the Court upon Plaintiffs Grant Danskine, *et al.*'s,[1] ("Plaintiffs") Motion for Partial Summary Judgment and Defendant Metropolitan Dade County Fire Department's ("Fire Department") Motion for Partial Summary Judgment. For the reasons set forth below, Plaintiffs' Motion is denied and Defen-

---

1. This action was filed by over sixty individual plaintiffs.

dant's Motion is denied in part and granted in part.

## BACKGROUND

This case arises out of an affirmative action program instituted voluntarily by the Fire Department in 1984. The affirmative action plan was previously the subject of extensive litigation. In 1986, Alan A. Peightal, an applicant for the position of entry-level fire fighter, brought an action against Metro Dade County Fire Department alleging reverse discrimination arising out of the affirmative action plan. In January of 1988, a bench trial was held before United States District Judge Alcee Hastings. Judge Hastings concluded that the affirmative action plan did not violate Title VII or the Equal Protection Clause of the Fourteenth Amendment. Thereafter, the Eleventh Circuit Court of Appeals affirmed the district court's finding with respect to the Title VII claim, but remanded the Equal Protection claim to this Court for reconsideration in light of *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). *See Peightal v. Metropolitan Dade County*, 940 F.2d 1394 (11th Cir.1991).

The undersigned conducted a second bench trial on January 11, 1993 and concluded that the affirmative action plan satisfied the strict scrutiny test mandated by the United States Supreme Court in *City of Richmond.*[2] Although the focus of the trial was race discrimination, the undersigned made various findings with respect to the Fire Department's past discrimination against women. *Peightal v. Metropolitan Dade County*, 815 F.Supp. 1454 (S.D.Fla.1993). Peightal subsequently filed an appeal challenging this Court's equal protection and strict scrutiny analysis as it applied to Hispanics. Peightal did not challenge any of the Court's findings with respect to Blacks and women. *Peightal v. Metropolitan Dade County*, 26 F.3d 1545, 1552 (11th Cir.1994). The Eleventh

Circuit Court of Appeals affirmed this Court's decision. *Id.* at 1562.

By the early 1990s, the Fire Department had satisfied its hiring goals with respect to Blacks and Hispanics. Accordingly, affirmative action hiring of Blacks and Hispanics was abolished. However, the Fire Department continued to give female applicants preferential treatment through a revised affirmative action plan.

Over sixty males who applied for entry level firefighter positions filed this case and claim that they were discriminated against as a result of the Fire Department's affirmative action plan and testing procedures which granted females hiring preferences. A majority of Plaintiffs claim that they were rejected while female applicants who received lower ratings during the selection process were hired. The remaining Plaintiffs contend that the testing procedures utilized by the Fire Department had a discriminatory effect.[3]

## UNDISPUTED FACTS

1. The Fire Department excluded women from firefighting positions up until the early 1980s.

2. In 1983, the Fire Department's workforce was only 1% female while the general population of Dade County was 52% female.

3. The Fire Department was unsuccessful at recruiting women because of its history of discrimination. Accordingly, the Fire Department voluntarily adopted an affirmative action plan which called for the preferential hiring of women.

4. The Fire Department's ultimate goal, pursuant to the affirmative action plan, was for 36% of its entry-level firefighters to be female. The Fire Department reviews its goal and hiring needs on a yearly basis.

---

**2.** Upon remand, the case was reassigned to the undersigned's docket.

**3.** The validity of the testing procedures is not the subject of the Motions for Summary Judg-

ment. The Motions addressed herein solely concern the validity of the affirmative action plan.

5. The Fire Department's hiring process in place prior to the initiation of this action was multi-faceted. The first step was an initial screening to ensure basic qualifications such as high school diploma, minimum age and driver's license. Individuals who possessed the requisite basic qualifications were permitted to take a written exam.

6. In 1994, 5807 applicants passed the written test. Due to this large number, the Fire Department conducted a random lottery in order to determine which applicants would advance to the second phase of the selection process. However, all female applicants who passed the written exam were withdrawn from the lottery and automatically advanced to the next stage of the selection process. Fifty one of the Plaintiffs were not selected in the lottery to advance to the second stage of the selection process.

7. Applicants who were selected to advance to the second phase were required to take a physical ability test ("PAT"). The PAT was rated on a pass/fail basis. In 1994–95, 11.8% of female applicants passed the PAT. In 1996, 39% of female candidates passed the test.

8. Applicants who passed the PAT were required to submit to an oral interview. Applicants who were successful during the oral interview phase were placed on an eligibility list in rank order. In 1994, thirteen of the Plaintiffs were placed on the eligibility list.

9. The Fire Department's personnel rules allow hiring from anywhere on the eligibility list. The policy of hiring out of rank order is a part of the affirmative action plan. The thirteen Plaintiffs that were placed on the eligibility list were not hired. Females who were ranked lower on the eligibility list than these Plaintiffs were hired.

10. Once the initial eligibility list was exhausted, a second selection round took place. Individuals who failed any part of

the process, including the physical ability test, up to the oral interview were called back and retested. After the second round of the selection process another eligibility list was created.

11. In 1994, 15.9% of the applicants for the position of entry-level firefighter were female. In 1997, the applicant pool was 21.69% female. As a result of the 1994–1997 hiring process, the Fire Department selected 255 candidates of whom 67 (26.5%) were female; 206 candidates were left on the eligibility list, including 15 females and 191 males. Subsequent to the 1994–1997 recruitment, the Fire Department's workforce increased from 8.89% female to 11–13% female.[4]

## STANDARD OF REVIEW

In deciding a summary judgment motion, a court must apply the standard stated in *Fed.R.Civ.P.* 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In applying this standard, the Eleventh Circuit has stated that:

> The party seeking summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case. In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant.

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982) (citations omitted); *see also Tisdale v. United*

---

**4.** Some of Defendant's documents and statements of its representatives indicate that the percentage of women employed as entry-level

firefighters was 11% whereas others indicate that the number was 13%. Accordingly, this Court is utilizing a range of 11–13%.

*States,* 62 F.3d 1367, 1370 (11th Cir.1995). Moreover, "the party opposing the motion for summary judgment bears the burden of responding only after the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479–480, 64 S.Ct. 232, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. 2505.

## DISCUSSION

### Whether the Court Should Review the Affirmative Action Plan.

The first issue that must be addressed is whether the Court should review the affirmative action plan. The Fire Department argues in its Motion for Summary Judgment that the validity of the plan was previously determined by the *Peightal* line of cases. Plaintiffs, however, maintain that this Court is required to once again review the affirmative action plan because gender was not the focus of the *Peightal* line of cases and refined statistics which were not previously available demonstrate that the plan is invalid and/or has served its purpose.

The Court, after extensive review of the record in the instant case and the *Peightal*

line of cases, has determined that the best course of action is to review the affirmative action plan, specifically in reference to gender and in light of the evidence presented by Plaintiffs. The Court finds that review is appropriate because, although various findings of fact were made concerning gender discrimination by the Fire Department in *Peightal,* the focus of that litigation was racial discrimination. The Court further finds that review is appropriate because Plaintiffs have alleged changed factual circumstances. *Cf. Ensley Branch, N.A.A.C.P. v. Seibels,* 31 F.3d 1548 (11th Cir.1994) (Consent decrees may only be modified to accommodate new factual or legal circumstances). Accordingly, Defendant's Motion for Partial Summary Judgment is denied in so far as it requests that this Court decline to review the affirmative action plan.

### Review of the Affirmative Action Plan

■■■■ Gender based classifications are subject to intermediate scrutiny under the Equal Protection Clause. *Ensley,* 31 F.3d at 1578. Discrimination on the basis of sex is unconstitutional unless that conduct is substantially related to the furtherance of an important government interest. *Id.* Accordingly, it is "easier to uphold affirmative action programs for women than for racial minorities." *Id.*

■■■■ Under the intermediate scrutiny test, a local government must demonstrate some past discrimination against women but not necessarily discrimination by the government itself. *Ensley,* 31 F.3d at 1580. This prong may be satisfied by a showing of societal discrimination in the relevant economic sector. *Id.* The principal purpose of intermediate scrutiny is not so much to make sure that gender-based classifications are used only as a last resort, as it is to ensure that gender classifications are based on reasoned analysis rather than archaic stereotypes. *Id.*

■■■■ The record in the instant case and the *Peightal* line of cases is replete with evidence of past discrimination against

women. As indicated in this Court's findings in *Peightal*, the Fire Department excluded women from its workforce up until the early 1980s. The evidence further reflected that in 1983, the Fire Department's workforce was only 1% female while the general population of Dade County was 52% female. There was also evidence indicating that the testing procedures and selection process utilized by the Fire Department had an adverse impact upon women. Finally, the evidence offered during the *Peightal* litigation revealed that the Fire Department's efforts at recruiting women and other minorities were unsuccessful in light of its past history of discrimination.

■ Plaintiffs contend that reliance on general population statistics is erroneous when refined statistics are available. Plaintiffs rely on *Peightal*, 26 F.3d at 1554–55, wherein the Eleventh Circuit indicated that reliance on general population statistics is undesirable and may diminish the value of a statistical comparison in instances where more specific statistics are available. *Peightal*, 26 F.3d at 1554–55. This Court notes, however, that gender-conscious relief is subject to a lower level of scrutiny than race-based relief. Gender-based relief may be justified based on past societal discrimination. Therefore, this Court concludes that general population statistics may be relied upon to support gender-based relief when bolstered by additional evidence of discrimination. *See International Bd. of Teamsters v. United States*, 431 U.S. 324, 339, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (upholding the use of general population figures as opposed to a more particularized assessment of the qualified applicant pool where there was significant anecdotal evidence of discrimination that bolstered the statistics in question).

In 1997, the Fire Department's entry-level workforce was 11–13% female. In comparison, 52% of Dade County's general population was female. This disparity in conjunction with the unequivocal evidence of past discrimination by the Fire Department presented in this case and *Peightal*

leads to the conclusion that vestiges of discrimination still exist. This evidence is further supported by the steady increase in applicants as a result of the affirmative action program. In 1994, 15.9% of the applicants for the position of entry-level firefighter were female. In 1997, the number of women applicants rose to 21.69%. Accordingly, this Court concludes that the Fire Department has once again demonstrated an important government interest in maintaining hiring preferences for women.

Despite the foregoing conclusion and in an abundance of caution, the Court has also examined the affirmative action plan in light of Plaintiffs' refined statistics. Plaintiffs argue that applicant flow data demonstrates that the statistical disparity between the Fire Department's workforce and the general population is the result of lack of interest on the part of women and a lack of qualified women rather than a vestige of past discrimination. In support of this view, Plaintiffs point to the following statistics: (1) in 1994 the applicant pool was 15.9% female and in 1997 21.69% female; (2) in 1994–95, only 11.8% of the female candidates passed the physical aptitude test and in 1996 39.2% passed. From the aforementioned numbers, Plaintiffs conclude that the total percentage of women interested and qualified for the position falls between 15.9% and 21.69%. Plaintiffs argue that a comparison between the alleged number of interested and qualified women and the percentage of women employed as entry level firefighters by the Fire Department demonstrates that there are no vestiges of past discrimination remaining.

The Court finds, however, that even if Plaintiffs' statistical interpretation is taken as true for the purpose of the instant motions for summary judgment, it does not support the conclusion that the affirmative action plan has served its purpose and is no longer necessary. First and foremost, at the time that Plaintiffs allege they suffered discrimination, the Fire De-

partment was only 8.89% female. That percentage was clearly well below the number of alleged females capable of and interested in the position of firefighter. Moreover, the undisputed evidence further reflects that the Fire Department's workforce was only 11–13% female after the 1994–1997 selection process. Consequently, even if this Court were to find that Plaintiffs' statistical analysis was correct, there was and still is a sufficiently significant disparity between the number of women in the position of entry level firefighter and Plaintiffs' version of the number of women interested and qualified for the position to survive intermediate scrutiny.

 In the alternative, Plaintiffs argue that the Fire Department's goal of 36% female entry-level firefighters is unobtainable and therefore the affirmative action plan is not substantially related to the goal of eradicating discrimination. This argument is wholly without merit. The Fire Department's hiring goal is a guidepost and not a mandate. The Fire Department has not applied the goal in a mechanistic or rigid manner. Between 1994 and 1997, the Fire Department only hired 26% females despite the fact that additional females were eligible to be hired. Moreover, the Fire Department reviews its workforce and hiring needs on a year to year basis. Accordingly, the Fire Department's affirmative action plan is not overly broad and is substantially related to remedying discrimination against women.

Finally, Plaintiffs suggest that statistics concerning the number of women currently working in protective services in Dade County demonstrates that the Fire Department's affirmative action plan is no longer necessary or is overly broad. This Court finds, however, that the disparity between the number of women employed in protective services and the number of entry-level firefighters employed by the Fire Department is sufficient to justify the use of an affirmative action plan. In 1990, 19% of protective service workers were female; whereas, the Fire Department's workforce was only 8.9% female in 1996 and 11–13% female in 1997. Without even delving into whether protective services is an appropriate comparison, the difference is sufficient under intermediate scrutiny to justify affirmative action.

**CONCLUSION**

For the foregoing reasons, it is

ORDERED AND ADJUDGED as follows:

1. Plaintiff's Motion for Partial Summary Judgment is DENIED.

2. Defendant's Motion for Partial Summary Judgment is DENIED with respect to the request that this Court decline to review the affirmative action plan.

3. Defendant's Motion is GRANTED in so far as it pertains to the validity of the affirmative action plan. This action shall remain pending solely as to those individual Plaintiffs who challenged the Fire Department's testing procedures.

It is further

ORDERED AND ADJUDGED that:

1. Defendant's Motion for Leave to File Memorandum in Excess of 20 Pages (D.E.77) is GRANTED;

2. Plaintiff's Motion for Leave to File Memorandum in Excess of 20 Pages (D.E.95) is GRANTED.

DONE AND ORDERED.