[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-6499

_____

D.C. Docket No. 98-00961-CV-C-W

MAGGIE DEDRICK, individually, & as
mother & next friend of LAKENDRA DEDRICK,
deceased minor,

Plaintiff-Appellee,

versus

DR. CLIFTON YOUNGBLOOD, et al.,

Defendant-Appellant

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 12, 2000)**

Before BLACK, Circuit Judge,  GODBOLD and FAY, Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

This case involves the interpretation of a public health service employee under

the Federally Supported Health Centers Assistance Act.   The Act was enacted in 1992 to reduce the growing costs of malpractice insurance to private nonprofit health centers that provide health services to medically underserved populations, commonly referred to as "§ 245(b) health centers" or "eligible entities."   The Act essentially makes the U.S. government the medical malpractice insurer for qualifying § 245(b) health centers, their officers, employees, and contractors, allowing these "deemed" health centers to forgo obtaining private malpractice insurance.  Youngblood based his appeal on an expanded interpretation of the definition of a contractor under § 233.

We must decide whether a doctor is considered a U.S. Public Health Service Employee within the meaning of § 233 of the Act if at the time he allegedly committed malpractice he was performing medical services as an employee of a legal entity that has contracted with a FSHCAA eligible health care entity.  It appears that we are the first circuit to address this issue.[1]  The district court remanded the case after it determined that Dr. Youngblood was not a contractor with provider coverage under the definition provided in § 233 of the Act.  We agree that Youngblood is not a

---

[1] The parties indicate that the court should be persuaded by a recent Tenth Circuit case.  We agree that the contractual relationship in this case is similar to that in Duplan v. Harper, 188 F.3d 1195, 1198 (10th Cir. 1999).  Dr. Harper was an employee of a corporation, Med-National, Inc., that contracted with the U.S. Air Force to provide medical services at Tinker AFB.  The incident giving rise to Duplan's claim arose during Dr. Harper's treatment of Duplan pursuant to the Tinker-Med-National contract.  The Tenth Circuit reversed a finding of the district court and held that Harper was not an employee of the government.  However, the court did not address the key issue in this case: whether Harper would be considered a contractor with Tinker under § 233.

covered provider under § 233 and affirm the decision of the district court.

Determining the contractual relationship of the parties is essential to properly interpreting this statute.[2] Youngblood entered into an employment contract with Capstone Health Services Foundation for a term of one year. Under the terms of the contract Youngblood became a member of the OB-GYN Department of the University of Alabama School of Medicine, Tuscaloosa. Capstone contracted to obtain professional liability insurance for Youngblood. Shortly after Youngblood entered into his employment contract with Capstone, Capstone entered into a provider agreement with West Alabama Health Services, Inc. Capstone agreed to provide OB-GYN related services to Medicaid eligible pregnant women at West Alabama facilities. The contract provided that Capstone would maintain malpractice insurance for its employees.

Youngblood treated Maggie Dedrick while he was providing OB-GYN services to a West Alabama clinic. Youngblood concedes that at the time he provided the services he was "on-call" for West Alabama pursuant to the provider contract between Capstone and West Alabama. Capstone billed West Alabama for the services

---

[2] There is no need to employ a control test to determine whether Youngblood is an employee of the government because there is no dispute that Youngblood qualifies only under the contractor exception if he qualifies at all. Although Youngblood does not dispute that all services rendered to West Alabama were pursuant to the provider contract between Capstone and West Alabama, he does dispute the district court's requirement for a direct contractual relationship between him and West Alabama.

rendered by Youngblood to Dedrick.

Dedrick filed a malpractice action against Youngblood in Alabama state court for alleged negligent acts that occurred during the treatment of her pregnancy. Youngblood removed the case to federal court on the ground that he was a covered employee under § 233 of the Act. He contends that federal jurisdiction was proper because of the special relationship between the Act and the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The Act provides the exclusive remedy for medical malpractice of employees or contractors of the Public Health Service. However, the district court held that Youngblood was not a Public Health Service "employee" under § 233 at the time of the alleged medical malpractice and remanded the case to state court.

The Act defined a Public Health Service employee to include "an entity described in [§ 233(g)(4)], and any officer, governing board member, or employee of such an entity, <u>and any contractor of such an entity who is a physician or other licensed or certified health care practitioner</u> (subject to paragraph 5)." 42 U.S.C. § 233(g)(1)(A). Paragraph (5) states:

> an <u>individual</u> may be considered a contractor of an entity . . . only if ..
> A)   the <u>individual</u> normally performs on average of at least 32 ½ hours of service per week for the entity for the period of the contract. § 233(g)(5); or
> B)   in the case of an <u>individual</u> who normally performs less than 32 ½ hours of service per week for the entity for the period of the contract, the <u>individual</u> is a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology.

4

42 U.S.C. § 233(g)(5).

Although Youngblood is an employee of Capstone and has no separate contract with West Alabama, he contends that the statute does not exclude him because it does not explicitly require direct contractual relations with West Alabama for him to be "deemed" an employee. Youngblood contends that the Act permits an individual physician to be "deemed" a Public Health Service employee if that physician performs services for a public health entity pursuant to **a** contract. However, strict interpretation requires that a contractor be an "individual" who contracts with an eligible entity. 42 U.S.C. § 233(g)(1)(A); § 233(g)(5).

Suits brought under the FTCA are generally limited to those claims arising from the negligent conduct of government employees. 28 U.S.C. § 1346(b). The FTCA retains sovereign immunity over claims against contractors. See Tisdale v. U.S., 62 F.3d 1367, 1371 (11th Cir. 1995). However, when a statute like the Act expands the liability of the government we must strictly construe the language used by Congress because the inclusion of contractor liability serves as an expanded waiver of sovereign immunity. See, e.g., Department of the Army v. Blue Fox, Inc., 119 S. Ct. 687, 691 (1999).

The expanded definition of a "contract employee" under § 233(g) of the Act to certain contractors of qualified health centers is clearly not an unlimited extension to all contractors. The text of § 233(g) states "or any contractor of such an entity who

is a physician or other licensed or certified health care practitioner." 42 U.S.C. § 233. We interpret the personal pronoun "who" as identifying only individual physicians who contract with eligible entities, not organizations or foundations who contract with eligible entities.[3]

The statutory language of the Act requires us to distinguish contracts by which an individual physician contracts with the eligible entity and those where the physician uses a separate entity, such as Capstone, to contract with the eligible entity. West Alabama contracted with Capstone, his employer. Although Youngblood is a licensed physician who provided services to the patients of West Alabama in the area of obstetrics, he did so pursuant to his contractual relationship with Capstone, not based on any contractual relationship with West Alabama. Whether Youngblood would have qualified as a contractor if there was a contract between him and West

_____

[3]Judge Fay's dissenting opinion relies without citation upon Congressional intent. The legislative history discusses at some length the need that the Act was addressing. However, both the 1992 and 1994 legislative histories state that the purpose of the Act is to relieve the financial burden imposed on eligible health centers by the costs of malpractice insurance. I cannot find any language stating that the purpose of the Act is to relieve the cost of malpractice insurance from any physician who treats any of the eligible entity's patients  See H.R. Rep. No. 398, 104th Cong., 1st Sess. 1995, 1996 U.S.C.C.A.N. 767; H.Rep. No. 823(I), 102d Cong., 2nd Sess. 1992, 1992 U.S.C.C.A.N. 2627.

> In the case of contractors providing health services to [eligible] health center patients, coverage is provided only to contractors who are licensed or certified health care practitioners.

H.R. Rep. No. 398, 104th Cong., 1st Sess. 1995, 1996 U.S.C.C.A.N. 767, at § 11.

Alabama is irrelevant. Youngblood is an employee of the contractor – Capstone. The statutory expansion of government liability under the FTCA does not apply in this case because there is no direct contractual relationship between the eligible entity and the physician.[4]

A doctor who wishes to be a covered employee is not precluded simply because he is a member of a group or a professional corporation. He is only precluded if he contracts with an eligible entity through another entity or group.[5] Therefore, because § 233(g) sets forth an initial requirement that a qualified individual first must have contracted with a covered entity, Youngblood was not qualified under the Act because he never contracted with West Alabama.

AFFIRMED.

FAY, Senior Circuit Judge, dissenting:

The majority opinion is sound and well reasoned. My concern is that the majority is creating a road block to the successful implementation of the

---

[4] We decline to address the concerns raised by Youngblood at oral argument regarding whether an individual doctor who contracts with an eligible entity through his professional corporation would be protected. Those facts are not before this court.

[5] We will not rewrite the statutory language of § 233(g)(1)(A) to expand the definition of contractors covered under the statute to include physicians like Youngblood who perform services for an eligible entity pursuant to an intermediate contract signed by a practice group or clinic. Youngblood's policy arguments suggesting that this interpretation of the statute will preclude any physician employed by a clinic or entity cannot overcome the express language of the statute. These concerns are more properly disposed of by Congress.

Congressional scheme designed to provide medical services to the indigent.

It is a fact of life that one of the major costs of practicing medicine is the high cost of malpractice insurance. In an attempt to secure the services of those doctors necessary to carry out the Federally Supported Health Centers Assistance Act, the Act provides financial malpractice protection to those doctors who qualify by placing their conduct under the Federal Tort Claims Act.

There is no question that Dr. Youngblood would be covered by the Act had he contracted directly, as an individual physician, with West Alabama. The majority holds that because there were intermediate or sub-contracts between West Alabama, Capstone and individual physicians (or their professional corporations) the doctors are not protected. It seems to me that such a holding flies in the face of Congressional intent. I would hold otherwise and, therefore, respectfully dissent.