[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 19, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15623
Non-Argument Calendar
_____

D. C. Docket No. 03-00192-CV-OC-10-GRJ

RODERICK T. SIMPSON,

Plaintiff-Appellant,

versus

CARLYLE HOLDER, et al.,

Defendants,

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 19, 2006)

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Roderick T. Simpson, a federal prisoner proceeding pro se, appeals the dismissal with prejudice of his amended complaint alleging claims against Defendant the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). After review, we affirm.

## I. BACKGROUND

### A. Amended Complaint

We first review the allegations in Simpson's amended complaint against the United States. Simpson is a federal prisoner at the Federal Correctional Complex in Coleman, Florida ("Coleman prison"). After Coleman prison granted Simpson permission to play flag football, Simpson injured his knee while playing flag football on October 21, 2000.

Simpson and his medical file were transported from Coleman prison to the private hospital of Leesburg Regional Medical Center ("LRMC") in Leesburg, Florida, where an emergency room physician "snapped" his knee in place. After the administration of "TPA,"[1] Simpson's condition worsened, and Drs. Roger W. Sherman and J. Mandume Kerina at LRMC performed a fasciotomy on Simpson's knee. They discovered severe damage. During a second surgery, metal pins were placed in the knee. Dr. Fernando Serra, also at LRMC, performed a debridement

---

[1]Simpson refers to "TPA" without identifying what it is.

of Simpson's leg wounds and a skin graft.

On November 7, 2000, Simpson was transferred to the Federal Medical Center at Rochester, Minnesota ("the prison hospital"). The doctors at the prison hospital noted that Simpson's leg appeared infected and had no movement and poor sensation. Simpson was transferred to St. Mary's Hospital, a private hospital in Rochester, where antibiotics were administered. Further examination and testing revealed that Simpson's leg was entirely necrotic. On November 13, 2000, doctors at St. Mary's amputated Simpson's leg from above the knee. On December 12, 2000, doctors at St. Mary's told Simpson he would be fitted for a prosthesis at the prison hospital; however, Simpson alleges that he had yet to receive one at the time he filed this suit on June 9, 2003.

On July 15, 2002, Simpson filed an administrative claim with the Bureau of Prisons ("BOP"), identifying the bases for his claim as the actions of doctors at the LRMC, a private hospital. His claim named Drs. Sherman, Kerina, and Serra and Dr. Ravi Gupta and other unknown doctors and nurses at LRMC and described their negligence, as follows:

> The Claimant, Mr. Roderick Simpson, was transferred to Leesburg Regional Medical Center from Coleman Correctional Complex as a result of a dislocated knee, sustained while playing football. The Claimant Prison Medical files were transferred with him to the Hospital. The medical files contained information regarding the claimant's diabetic history. The Leesburg Medical Doctors were

3

> negligent in their treatment and lack of treatment to claiment [sic].
> The Doctors should have known that a reduced supply of blood to the
> lower extremities may cause irreversible damage and ultimately lead
> to the death of the leg tissues unless proper circulation is restored.

On December 20, 2002, the BOP denied Simpson's claim, finding that he had not alleged any negligence or wrongful action by government employees of the United States or by the medical staff at Coleman prison, but only by medical contractors at LRMC (a private hospital) over whom the United States did not exercise physical, day-to-day control.

On June 9, 2003, Simpson pro se filed this action alleging claims pursuant to the FTCA and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971).  His initial complaint named as defendants: Carlyle Holder, the warden at Coleman prison; Gregory L. Parks, the former warden; Jamie Cacho, a physician's assistant at Coleman prison; a John Doe defendant identified as a recreation specialist at Coleman prison; two John Doe defendants identified as doctors at LRMC; Drs. Sherman, Kerina, Serra and Gupta at LRMC; and other unknown BOP employees at Coleman prison and doctors and nurses at LRMC.

In a frivolity determination, the district court dismissed Simpson's Bivens claims against the individually named federal employees for failure to exhaust

administrative remedies.[2]  The district court noted that the United States is the proper defendant in a suit brought under the FTCA and ordered Simpson to file an amended complaint against the United States.

Simpson filed an amended complaint, entitled "Amended Complaint Pursuant to Court Order(s) of December 11, 2003 and January 12, 2004 Federal Tort Claim Act 28 U.S.C. §2672 et. seq."  His amended complaint asserts FTCA claims against the United States for negligence by "the United States; its employees; and its employees under contract . . . ."  A footnote appended to the style of his amended complaint states that the United States "includes any and all its employees whom the Plaintiff specifically names within this complaint."  The body of the amended complaint identifies as defendants: Jaimie Cacho at Coleman prison and Drs. Sherman, Kerina and Serra at LRMC.

As to the Coleman prison staff, Simpson's amended complaint alleges negligence: (1) in allowing Simpson to play football without first examining him or his medical records and medically clearing him to play; and (2) in failing to provide Simpson with a prosthesis.  As to the LRMC medical staff, Simpson's amended complaint alleges negligence: (1) in failing to consult plaintiff's prison medical records before resetting his dislocated knee; (2) in placing metal pins and

---

[2]Simpson does not appeal the dismissal of his Bivens claims.

staples in Simpson's knee when they should have known that he would suffer complications due to his diabetes; and (3) in prematurely performing a skin graft.

**B.      Summary Judgment Notice**

On April 1, 2004, the magistrate judge issued an order styled "Order to Answer and Notice to Plaintiff."  The order directed the defendant government to answer Simpson's amended complaint within 60 days of service.

The April 1, 2004 order also warned Simpson that, if the defendant filed a motion to dismiss and attached documents and supporting affidavits, the court would treat the motion as a summary judgment motion.  The order further warned that Simpson would have twenty days to respond to the defendant's converted summary judgment motion and produce sworn affidavits and other documents demonstrating a genuine issue of material fact or risk entry of final judgment in the government's favor, as follows:

> If Defendant files a motion to dismiss, Plaintiff shall have **TWENTY (20) DAYS** to file his response to the motion to dismiss. Pro se Plaintiff is advised out of an abundance of caution that the granting of this motion would represent an adjudication of this case which may foreclose subsequent litigation on the matter.  If Defendant files a motion to dismiss that is supported by affidavits or other documents, the Court will construe the motion to dismiss as a motion for summary judgment, and Plaintiff shall have **TWENTY (20) DAYS** to file his response.  If Defendant files a motion for summary judgment, Plaintiff shall have **TWENTY (20) DAYS** to file his response.  In preparing a response to a motion to dismiss (construed as a motion for summary judgment), or a motion for summary judgment,

Plaintiff should be aware of the provisions of Rule 56 of the Federal Rules of Civil Procedure.

Rule 56 provides that when a motion for summary judgment is supported by affidavits and/or other documents, the party opposing the motion may not depend on the mere allegations in his pleadings to counter it. Pursuant to Rule 56, the party opposing the motion must respond with counter sworn affidavits and/or documents to set forth specific facts showing that there is a genuine issue of material fact in dispute. If the opposing party fails to respond to the motion or responds, but the response does not comply with the requirements of Rule 56 as stated above, the Court may declare that the facts in the affidavits and/or documents supporting the motion are established as true and that there is no genuine issue of material fact in dispute. In that event, if the applicable law allows, the party or parties who filed the motion will be entitled to have the motion granted and final judgment entered in his/their favor based upon the pleadings, affidavits, and other documentation. If the motion is granted, there will be no trial, and the case will be terminated in this Court.

(Footnote omitted.)

## C. Defendant's Motion to Dismiss

About two months after the above notice was sent, the defendant government did file a motion to dismiss, arguing that Simpson failed to exhaust available administrative remedies as to the Coleman prison staff claims. With regard to the LRMC medical claims, the government's motion argued that it could not be held liable under the FTCA for acts of its medical contractors at LRMC. In support of its motion, the government submitted evidence, including, inter alia, various documents and a declaration indicating that Drs. Sherman, Kerina and Serra were members of LRMC's staff, not federal employees at Coleman prison,

7

and provided medical services to the prison on a contract basis.

Simpson filed a response to the motion, which he styled "Plaintiff's Affidavit in Opposition to Defendant's Motion to Dismiss Amended Complaint." Simpson's response was sworn to and signed by Simpson. He also attached two pages of his medical records to his response.

The district court granted the motion and dismissed Simpson's amended complaint with prejudice. As to the individual defendants, the district court concluded that the proper defendant in FTCA claims is the United States and Simpson's FTCA claims against the individual defendants were improper and must be dismissed. As to the liability of the defendant United States, the district court determined that: (1) Simpson had failed to exhaust his administrative remedies with regard to his Coleman prison staff claims; and (2) the United States could not be held liable under the FTCA for the negligence of the doctors and nurses at LRMC, a private hospital, because they were independent contractors. Although ruling on a motion to dismiss, the district court relied on the government's evidence about the medical persons being independent contractors and noted that Simpson had not alleged that the BOP supervised the doctors' day-to-day activities at the LRMC hospital. Simpson timely appealed.

## II. DISCUSSION

### A. Individual Defendants

The United States is the only proper defendant in an FTCA action. See 28 U.S.C. § 2679(a), (b); see also Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998); Galvin v. OSHA, 860 F.2d 181, 183 (5th Cir. 1988); Mars v. Hanberry, 752 F.2d 254, 255 (6th Cir. 1985). Therefore, the district court properly dismissed Simpson's FTCA claims against the individually named defendants.

### B. Administrative Exhaustion

As to Defendant the United States, the district court properly dismissed Simpson's FTCA claims based on acts of the Coleman prison staff. Before a plaintiff may file suit asserting an FTCA claim for negligence, the plaintiff must have "first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). "Section 2675(a) is satisfied if the claimant (1) gave the appropriate agency written notice of the tort claim to enable the agency to investigate; and (2) stated a sum certain as to the value of the claim." Orlando Helicopter Airways v. United States, 75 F.3d 622, 625 (11th Cir. 1996). Compliance with § 2675(a) is a jurisdictional prerequisite to maintaining an FTCA action. Tidd v. United States, 786 F.2d 1565, 1567 (11th Cir. 1986).

Simpson's amended complaint against the United States for the acts of the

Coleman prison staff alleged that the staff: (1) failed to clear him medically before permitting him to play flag football in prison, and (2) refused to fit him with a prosthesis.[3]  However, Simpson's administrative complaint filed with the BOP described only the allegedly negligent medical treatment he received for his injured knee.  It did not mention the prison staff's alleged failure to screen him prior to his playing football.  In fact, his administrative complaint did not name any Coleman prison personnel when identifying those involved in his injury.  It also did not mention the prison staff's alleged failure to provide him with a prosthesis.  Even under a liberal construction of Simpson's administrative complaint, the district court properly concluded that Simpson's flag football and prosthesis claims fell outside the scope of his administrative complaint and had not been exhausted.

## C.    Medical Claims

The FTCA provides a limited waiver of sovereign immunity for claims against the United States for the negligence of "any employee of the Government . . . ."  28 U.S.C. § 1346(b)(1).  The United States is not liable under the FTCA for the negligence of "any contractor with the United States."  28 U.S.C. § 2671.  The distinction between an employee and an independent contractor turns on the power of the United States "to control the detailed physical performance of the

---

[3]It is unclear whether Simpson now has a prosthesis, but construing the pleadings liberally and in a light most favorable to Simpson, we will assume he does not.

contractor." Logue v. United States, 412 U.S. 521, 527-28, 93 S. Ct. 2215, 2219 (1973). That is, the United States is not liable for a contractor's negligence unless it supervises the contractor's "day-to-day operations . . . ." Id. at 529, 93 S. Ct. at 2220.[4]

In analyzing whether the medical doctors and nurses at LRMC were employees or independent contractors, the district court relied on matters outside the pleadings. The district court then dismissed Simpson's claims under Rule 12(b)(1) for lack of subject matter jurisdiction.

However, the government's motion to dismiss was a facial attack on subject matter jurisdiction that was intertwined with the merits of Simpson's claim. Whether the LRMC medical staff are government employees or independent contractors affects both subject matter jurisdiction under the FTCA and the merits of the FTCA claim. See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (concluding that whether an employee was acting within the scope of his employment implicated both subject matter jurisdiction and the merits of the FTCA claim); see also Tisdale v. United States, 62 F.3d 1367, 1370-71 (11th Cir. 1995) (affirming district court's decision at summary judgment that the United States was not liable for contractor's actions forming the basis of the FTCA claim).

_____

[4]We review de novo dismissals for lack of subject matter jurisdiction under the FTCA. Ochran v. United States, 273 F.3d 1315, 1317 (11th Cir. 2001).

As the district court considered matters outside the pleadings, the district court was required to comply with the notice requirements of Rule 56. See Fed. R. Civ. P. 56(c); Massey v. Cong. Life Ins. Co., 116 F.3d 1414, 1417 (11th Cir. 1997). The district court did so here through the magistrate judge's "Order to Answer and Notice to Plaintiff." Given the clarity and thoroughness of the notice given in the magistrate judge's order, coupled with the fact that Simpson responded to the motion by producing a sworn statement and documents of his own, we conclude that the notice given here was sufficient. See Coleman v. Smith, 828 F.2d 714, 715-17 (11th Cir. 1987) (concluding that orders by magistrate judge prior to district court's ruling upon converted motion to dismiss adequately notified pro se litigant under Rule 56(c)).

Even assuming the Rule 56(c) notice should have been sent again after the motion to dismiss had been filed with supporting declarations and documents, any error was harmless. See Denis v. Liberty Mut. Ins. Co., 791 F.2d 846, 850 (11th Cir. 1986) (applying harmless error analysis to failure to give Rule 56(c) notice). Simpson has never alleged or argued that the government supervised the day-to-day operations of the LRMC medical staff who treated him. Indeed, on appeal Simpson contends that the government failed to supervise the LRMC medical staff who treated him. Given that Simpson does not dispute that the LRMC medical

12

staff were independent contractors and that the government did not supervise them, any failure to give Simpson adequate Rule 56(c) notice was harmless. See Byrne v. Nezhat, 261 F.3d 1075, 1104 n.63 (11th Cir. 2001) (concluding that district court's failure to give Rule 56(c) notice was harmless error where there was no factual dispute).

For all these reasons, the district court properly concluded that the United States was immune from suit under the FTCA for the acts of the doctors and nurses at LRMC, a private hospital.

**AFFIRMED.**