Veronica CRUZ, individually and as natural guardian of Gabriel Cortes, Jr., and Gabriel Cortes, Sr., natural father, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 97–0094–CIV.

United States District Court, S.D. Florida.

April 6, 1998.

James K. Beckham, Miami, FL, Brent Probinsky, Homestead, FL, for plaintiffs.

Wendy A. Jacobus, Assistant U.S. Attorney, Miami, FL, for defendant.

## ORDER AFFIRMING REPORT AND RECOMMENDATION; GRANTING MOTION FOR SUMMARY JUDGMENT AS TO COUNT I

GOLD, District Judge.

On March 2, 1998, United States Magistrate Judge Robert L. Dube' issued a Report and Recommendation which recommends that this Court grant defendant's Corrected Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [D.E. #18]. Plaintiffs, Veronica Cruz and Gabriel Cortes, Sr., filed objections to the Report and Recommendation. The Court has considered the Report and Recommendation and the memorandum filed by plaintiffs. After an independent review of the record, and a *de novo* determination of the issues, the Court concludes that the Magistrate's recommendation of dismissal of Count I for lack of jurisdiction was correct under applicable law.

According to plaintiffs, the facts of this action are not in dispute. (Objections, at 2). Plaintiff Veronica Cruz was under the care of physicians at Martin Luther King, Jr., Clinica Campesina ("Clinic"), in connection with her pregnancy. The Clinic is operated by Community Health of South Dade, Inc. ("CHI"). On October 21, 1993, Ms. Cruz went to the Clinic complaining of lower back pain and was treated by various physicians, including Dr. Nilda Soto.

The child was ultimately delivered in a breach position with a prolapsed cord and severe brain damage.

Plaintiffs filed an action against the United States in January 1997. Plaintiff subsequently amended its Complaint, alleging negligence by four doctors, Dr. Soto (Count I), Dr. Gonzalez (Count II), Dr. Blanco (Count III), and Dr. Annakutyy (Count IV), in failing to provide proper care, pre-natal and post delivery, to Ms. Cruz and to the child Gabriel Cortes, Jr. Plaintiffs assert that the United States is liable for the alleged negligence of the four physicians. Plaintiffs predicate this claim upon the Federally Supported Health Centers Assistance Act ("Act"), 42 U.S.C. § 233(g), which provides an exclusive remedy under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), for medical malpractice of employees or contractors of the Public Health Service.[1]

Defendant denies that this Court has subject matter jurisdiction. Defendant argues that the actions of individuals in Dr. Soto's circumstances do not provide a basis for waiver of sovereign immunity under the FTCA, and, therefore, no basis for liability against the United States. The Act provides for waiver of sovereign immunity where the individual in question, 1) is deemed an employee of the Public Health Service, or, alternatively, 2) is a contractor physician or health care practitioner who works more than 32½ hours per week. 42 U.S.C. § 233(g)(1)(A) and (g)(5). The issue presented, therefore, is whether Dr. Soto qualifies under the statutory language of the Act as an employee or contractor of the Public Health Service.

The exclusive remedy for claims like those here is under the Federal Tort Claims Act. A brief review of the applicable law under the FTCA is instructive.

---

1. As recognized by the Magistrate Judge, plaintiffs here have conceded that all claims for pre-natal care, specifically those in ¶¶ 26, 27(a), (b), (c) and (d), should be stricken, as the United States is not liable for any medical malpractice that may have occurred prior to October 1, 1993. This concession resolves any argument regarding alleged negligence committed prior to October 1, 1993, by Dr. Gonzalez (Count II), Dr. Blanco (Count III) and Dr. Annakutyy (Count IV).

Suits under the FTCA are limited to those which involve claims arising from "the negligent or wrongful act or omission of any employee of the Government ... acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The FTCA specifically excludes "any contractor with the United States" from its coverage. See *Tisdale v. United States*, 62 F.3d 1367, 1371 (11th Cir.1995) (citing 28 U.S.C. § 2671). Thus, prior to the enactment of the Act, the United States was not liable under the FTCA for the acts or omissions of independent contractors in its employ. See *Id.* (citing *United States v. Orleans*, 425 U.S. 807, 813–16, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)).

 The FTCA contains a limited waiver of the United States's sovereign immunity, allowing a plaintiff to sue the United States for damages for injuries resulting from certain torts of government employees acting within the scope of their employment. *Robb v. United States*, 80 F.3d 884, 887 (4th Cir.1996) (citing 28 U.S.C. § 1346(b)); *Tisdale*, 62 F.3d at 1371. An " '[e]mployee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States." *Id.* (quoting 28 U.S.C. § 2671). Because the term "federal agency" explicitly excluded "any contractor with the United States," Congress had not waived the sovereign immunity of the United States for injuries resulting from the ac-

tions of independent contractors performing work for the government.[2] See *Orleans*, 425 U.S. at 814, 96 S.Ct. 1971.

 In 1993, Congress amended 42 U.S.C. § 233 to extend FTCA protection to qualifying federally supported health centers.[3] *Wilson v. United States*, 976 F.Supp. 1157, 1159 (N.D.Ill.1997). The Act sought to eliminate the expense borne by federally funded health centers for medical malpractice insurance, enabling the clinics to funnel more federal dollars into patient care. *Id.* (citing H.R.Rep. No. 104–398, 104th Cong., 1st Sess. (1995)); see also H.R.Rep. No. 102–823(II), 102nd Cong., 2nd Sess. (1992). The House Reports clearly demonstrate the significant burden that medical malpractice insurance placed on these health centers:

> To provide health care services, the grantees (and subcontracting organizations) employ physicians and other health care practitioners either directly or on a contract basis. Purchase of malpractice insurance is one of the most significant expenses for health centers. In 1992, the Committee examined health center expenses for malpractice insurance and found ... that over $50 million had been spent in Fiscal Year 1989 for malpractice insurance premiums; less than 10 percent of that had been paid out in actual claims payments and related costs.

H.R.Rep. No. 104–398, at 7 (1995). Congress intended to expand the FTCA coverage umbrella to allow federally funded health centers to "redirect funds now spent on malpractice insurance premiums

---

**2.** The FTCA, as a waiver of sovereign immunity, is strictly construed, and all ambiguities are resolved in favor of the sovereign. See *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Williams*, 50 F.3d at 305. Accordingly, the independent contractor exception to the waiver of sovereign immunity has been construed broadly. See *Robb*, 80 F.3d 884 at 887; *Lurch v. United States*, 719 F.2d 333, 338 (10th Cir.1983). Although state law governs the substantive duties of the United States under the FTCA, 28 U.S.C. § 1346(b),

whether a person is a contractor or an employee is determined under federal law. See *Robb*, 80 F.3d at 887 (citing *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973)).

**3.** Section 233(g) was added to the existing statute and extended FTCA protection of federally supported health centers. 42 U.S.C. § 233(g). This subsection became effective January 1, 1993 and is applicable to the case at hand. See 42 U.S.C. § 233(g)(1).

toward improving or expanding their services to their target populations." H.R.Rep. No. 102–823(II), 102nd Cong.2nd Sess. (1992).

■ Here, as stated by the Magistrate Judge, the Court must employ the "control" test to determine whether Dr. Soto qualifies as an employee of the Public Health Service. *Robb*, 80 F.3d 884 at 887 (citing *Logue*, 412 U.S. at 528, 93 S.Ct. 2215). The control test analyzes the relationship between the government and the allegedly negligent physician to determine whether or not the physician qualifies as a government employee. *Limo v. United States*, 852 F.Supp. 50, 52 (D.D.C.1994) (citing *Logue*, 412 U.S. at 527, 93 S.Ct. 2215). The question hinges on the authority to control the individual's physical conduct. *Id.*

In applying the control test under different facts than those here, the Eleventh Circuit focused on whether the United States had the power " 'to control the detailed physical performance of the contractor,' " or, in other words, "whether [the individual's] day-to-day operations are supervised by the Federal Government." [4] *Tisdale*, 62 F.3d at 1371 (quoting *Orleans*, 425 U.S. at 813–816, 96 S.Ct. 1971). "[T]he real test is control over the primary activity contracted for and not the peripheral, administrative acts relating to such activity." *Robb*, 80 F.3d 884 at 887 (quoting *Wood v. Standard Products Co. Inc.*, 671 F.2d 825, 831 (4th Cir.1982)).

Guided by these principles, the Court first must determine whether Dr. Soto qualifies as an employee under Section 233(g) of the Act, and, if not, whether Dr. Soto was a contractor under §§ 233(g)(1)(A) and (g)(5).

■ The Magistrate Judge found that Dr. Soto was an employee of the Public Health Trust ("Trust"), not CHI.[5] The Magistrate Judge further concluded that the arrangement between the Trust and CHI, whereby the Trust contracted with CHI to assign physicians within its employ to CHI's clinic, did not transform Trust employees into those of CHI. The Magistrate Judge's conclusion is supported by the evidence.

The contract between the Trust and Dr. Soto provides persuasive authority in support of the Magistrate Judge's conclusion that Dr. Soto was an employee of the Trust. *Wood*, 671 F.2d at 829 ("the contract and the terms in fixing the relationship of the offending party are critical"); *MacDonald v. United States*, 807 F.Supp. 775, 779 (M.D.Ga.1992). According to the Physician Agreement ("Agreement"), Dr. Soto was to act "in accordance with those Trust personnel policies which the Trust administration deems applicable to Physician" (Physician Agreement, Def.Ex. 1, ¶ 1) and "under the control and direction of the Trust with respect to the method and manner by which Physician performs his professional function and to that end will be responsible to the appropriate Trust Chief of Service." [6] *Id.* ¶ 3.

---

4. Recognizing the ethical responsibility of physicians to exercise independent professional judgment, the Seventh Circuit adopted a "modified control test." *Quilico v. Kaplan*, 749 F.2d 480, 485 (7th Cir.1984). Other Courts, however, have rejected to approach and applied the principles in *Logue* and *Orleans*. *Robb*, 80 F.3d at 890–91.

5. As of October 1, 1993, CHI qualifies as an employee of the Public Health Services. Therefore, the clinic and its physicians are protected under certain circumstances by the FTCA. The status of CHI is not dispositive, however.

6. This paragraph of the Agreement provides further:

"Specifically, Physician agrees:
a). To abide by all Trust Rules, regulations and procedures which are applicable to the provision of Physician services; including protocol relating to completion of medical records.
b). To comply with the Trust medical staff by-laws and regulations.
c). To participate in quality assurances review procedures and any such other Trust activities and committees as may be necessary." (*Id.* ¶ 3.(a, b, c)).

Although the Agreement gives the Trust physicians a certain amount of flexibility to abide by CHI directives,[7] the Agreement clearly states that the Trust physicians remain employees of the Trust. The Agreement expressly states that Dr. Soto was "at all times [ ] acting and performing as the employee of the Trust." *Id.* ¶ 5. In addition, the Trust retained "the exclusive right to hire, assign, schedule and/or discipline and other otherwise determine the staff privileges and terms of employment of Physician while in the employ of the Trust." *Id.* ¶ 6. Finally, the Trust retained its right to terminate Dr. Soto "immediately" under certain circumstances. *Id.* ¶ 6.1. By the terms of the Agreement itself, Dr. Soto was an employee of the Trust, as the Trust had "control over the primary activity contracted for." *Robb,* 80 F.3d 884 at 887; see also *MacDonald,* 807 F.Supp. at 779.

Aside from the contract itself, other courts have examined such factors as payment of salary and insurance premiums, and control over the day-to-day work of the individual at issue. *Robb,* 80 F.3d at 891 (finding payment of salary by third entity relevant to inquiry). Here, the Trust is responsible for payment of Dr. Soto's salary; Dr. Soto never received a salary directly from the United States after she began her employment with the Trust in 1988. The record evidence also indicates that after 1988, the year Dr. Soto left CHI for the Trust, CHI never purchased liability insurance for Dr. Soto. *MacDonald,* 807 F.Supp. at 780 (the payment of liability insurance premiums "is a strong indication that the party is an independent contractor rather than a federal employee under FTCA").

Also, competent summary judgment evidence demonstrates that the Trust maintained control over the physicians onsite at CHI. First, contrary to plaintiff's contention, Trust doctors "ordinarily" supervised other doctors employed by the Trust. (Hartley Dep., Pla.Ex. at 31). This is consistent with Dr. Soto's employment situation at CHI, as Dr. Sisodia, a Trust physician, supervised Dr. Soto. In addition, CHI was without authority to suspend or fire a Trust physician, although as pointed out by plaintiff, the Trust was respectful of CHI's recommendations regarding increases in salary and other changes in employment status by Trust physicians at CHI. Moreover, Colonel Hartley testified in deposition that CHI's lack of authority over Trust physicians had induced CHI to reevaluate its staffing: CHI is now moving toward a staff exclusively composed of CHI employees.

In March 1996, CHI no longer needed the services of Dr. Soto. The Trust offered Dr. Soto a position at the Liberty City Health Service Center, a Public Health Trust medical facility. Dr. Soto declined the position and applied for another, more personally suitable, position with the Trust. Plaintiff argues that Dr. Soto's reapplication indicates that she was not an employee at the Trust during her years at CHI. Dr. Soto explained in deposition that her refusal to accept the position at the Liberty City resulted in her termination from the Trust. Dr. Soto, therefore, had to re-apply to be eligible for a second Trust position.

The Magistrate Judge concluded that Dr. Soto's explanation was credible and found further that her application actually strengthened the government's contention that Dr. Soto was a Trust employee. In her application, Dr. Soto stated that she had been employed with "Community Health of So. Dade/trust MD" from August 1988 to March 1996 and, for the period prior to August 1988, she listed "same but directly to CHI." The Court agrees with the Magistrate that Dr. Soto's notations are further proof of her status as a Trust employee after August of 1988.

---

7. In line with this objective, the Agreement provides that "[t]o the extent that such policies are not substantially inconsistent with the Trust protocol, Physician will adhere to CHI administrative procedures in an effort to provide continuity of care at CHI." *Id.* ¶ 4.

The Magistrate Judge ultimately determined that plaintiff failed to raise a genuine issue of material fact regarding the employment relationship between CHI and Dr. Soto. This Court agrees. The express language of the Agreement provides that the Trust controlled the "primary activity" of the Trust physicians at CHI. Competent record evidence also demonstrates that the Trust maintained day-to-day control over the physicians by, 1) supervising its own physicians with other Trust physicians, 2) paying the Trust physicians, and 3) exercising the authority to hire, discipline, and terminate Trust physicians. The fact that CHI had input in Trust decisions regarding Trust physicians at CHI does not create a genuine issue of material fact. "[T]he United States may still fix specific conditions to implement federal objectives and can require compliance with federal standards without transforming contractors into employees." *Limo*, 852 F.Supp. at 52 (citing *Orleans*, 425 U.S. at 815, 96 S.Ct. 1971).

The Magistrate Judge's decision also comports with the Circuits examining this issue, which have consistently held that physicians either in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, and not employees of the government for FTCA purposes. See *Robb*, 80 F.3d 884 at 890; *Carrillo v. United States*, 5 F.3d 1302, 1304–1306 (9th Cir.1993); *Broussard v. United States*, 989 F.2d 171, 174–76 (5th Cir.1993); *Leone v. United States*, 910 F.2d 46, 48–51 (2nd Cir.1990); *Lilly v. Fieldstone*, 876 F.2d 857 (10th Cir.1989); *Lurch v. United States*, 719 F.2d 333 (10th Cir.1983); *Bernie v. United States*, 712 F.2d 1271 (8th Cir.1983).[8]

**8.** The cases cited above examined the issues before this Court based upon the FTCA, not upon the Act. Each Court determined that the physician in the matter was not an employee of the United States. Because the Court exam-

Plaintiff next contends that Dr. Soto qualifies as a contractor within the scope of Section 233(g)(1)(A) and (g)(5), because she is a physician who worked for CHI more than 32½ hours per week. As such, according to plaintiff, the United States is liable for Dr. Soto's alleged negligence.

Section 233(g)(1)(A) provides that "any contractor of such an entity who is a physician or other licensed health care provider (subject to paragraph 5), shall be deemed to be an employee of the Public Health Service." Section 233(g)(5) further qualifies what constitutes a contractor under the statute, by limiting contractor status to an "individual [who] normally performs an average of at least 32½ hours of service a week for the entity for the period of the contract...."

In reviewing this statute, defendant argues that the phrase, "who is a physician or other licensed health care provider," modifies contractor. As such, Defendant contends that Congress intended to limit coverage to contractors who were individual physicians or other health care practitioners, not to contractors who were companies or county facilities. Plaintiff argues that defendant's construction of the statute impermissibly adds words to the statute. *Adam Sommerrock Holzbau, GmbH v. U.S.*, 866 F.2d 427, 429 (Fed.Cir.1989) (Courts have no right to either add words or eliminate words in construing a statute) (citations omitted).

The Magistrate Judge, however, focused on a different language in Section 233(g). The Magistrate Judge concluded that:

"[t]he statute, by its terms, applies to those situations where the physician enters into a contract with the entity deemed to be part of the Public Health Service, which in this case would be CHI. The Record before the Court

ines this action under the Act, the Court must now determine whether Dr. Soto was a contractor according to the language of Section 233(g)(1)(A) and 233(g)(5).

shows that Dr. Soto contracted with the Public Health Trust of Dade County and not with CHI. Accordingly, there is no basis for a finding of a contractor relationship."

(Report and Recommendation, p. 7). The Magistrate Judge, therefore, focused on the phrase—"any contractor of such an entity"—which states clearly that coverage is extended to contractors of covered entities. As there is no contract between Dr. Soto and CHI, the Magistrate Judge found that there was no basis for extending FTCA coverage to Dr. Soto.

This Court agrees with the Magistrate Judge's interpretation of Section 233(g). The key phrase identified by the Magistrate sets forth an initial requirement that a qualified individual first must have contracted with a covered entity. Dr. Soto never contracted with CHI. Contrary to plaintiff's contention, the Magistrate Judge's statutory interpretation, adopted by this Court, does not rely upon adding words to the statute, but, instead, construes those already within the Statute. Magistrate Dube's report and recommendation is affirmed in this regard and in all other respects.

Accordingly, it is

**ORDERED AND ADJUDGED** that the Corrected Motion to Dismiss, or in the Alternative Motion for Summary Judgment [D.E. #18], be and it is hereby GRANTED, as to Count I of the Amended Complaint. It is further

**ORDERED AND ADJUDGED** that all claims for pre-natal care, specifically those in ¶¶ 26, 27(a), (b), (c) and (d), be, and they are hereby STRICKEN, as the United States is not liable for any medical malpractice that may have occurred prior to October 1, 1993.