**EL RIO SANTA CRUZ NEIGHBOR-HOOD HEALTH CENTER, INC., et al., Plaintiffs,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendants.**

No. CIV.A.03–1753(ESH).

United States District Court, District of Columbia.

Jan. 15, 2004.

James L. Feldesman, Feldesman, Tucker, Leifer, Fidell & Bank, LLP, Washington, DC, for Plaintiffs.

Gail K. Johnson, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiffs seek review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, of a Department of Health and Human Services ("HHS") determination that they are ineligible for medical malpractice liability coverage from the federal government under the Federally Supported Health Centers Assistance Act ("FSHCAA" or "the Act"), 42 U.S.C. § 233(g). For the reasons set forth below, plaintiffs' motion for summary judgment will be granted, and defendants' cross-motion will be denied.

## BACKGROUND

Plaintiffs are physicians who provide obstetric and gynecological services in Arizona for patients of El Rio Santa Cruz Neighborhood Health Center, Inc. ("El Rio") through contracts established between El Rio and each physician's individually-owned, eponymous corporation. As a non-profit clinic that receives federal funds for the provision of medical care to low-income patients, El Rio receives professional liability coverage from the federal government pursuant to the FSHCAA. This Act makes federally-funded community health centers and their employees, officers, and individual contractors eligible for medical malpractice coverage under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, to the same extent as federal employees of the Public Health Service.

In July 2002 the family of an El Rio patient sued plaintiffs, among others, in a survival action in Arizona state court for medical malpractice allegedly committed in July 2000. *See Puig v. Rios,* No.2002–

3441 (Ariz.Sup.Ct.). Shortly thereafter, El Rio notified HHS of the suit and submitted information to the agency for a determination of the physicians' FTCA coverage, which, if granted, would prompt the substitution of the United States as defendant for the individual physicians in the malpractice suit. *See* 42 U.S.C. § 233(g)(1)(A). HHS, however, denied the physicians FTCA coverage by letter dated January 23, 2003, to El Rio from Elizabeth Jordan Gianturco, the Chief of the Claims and Employment Law Branch of HHS's General Counsel's Office ("the Gianturco letter"). The letter stated that plaintiffs

> cannot be deemed employees of the Public Health Service because their contracts were between the health center and a professional corporation. *See* BPHC Policy Information Notice 99–08, Section IV. Based upon the above, this agency has determined that this matter does not meet the criteria under the FSHCAA for coverage under the Federal Tort Claims Act (FTCA) and for representation by the United States government.

Although HHS had made its determination, the physicians removed the malpractice action from state to federal court in Arizona in March 2003.[1] *See Puig v. Rios,* Civ. No. 03–161 (D.Ariz.). El Rio sought intervenor status for the sole purpose of adjudicating the FTCA coverage issue, and before that motion was decided, the physicians and El Rio filed a joint petition for a determination of the physicians' coverage and a third-party complaint for declaratory and injunctive relief against HHS and Tommy Thompson as "necessary parties"

to the coverage decision. Meanwhile, the malpractice plaintiff had moved to remand the case to state court. On June 5, 2003, the court granted the remand because it found that the notice of removal had not been timely filed as required by 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1446(b), and therefore, the remaining matters were moot. El Rio subsequently withdrew its motion to intervene, and the third-party complaint was also voluntarily withdrawn.[2] Thus, the malpractice claim is currently pending in Arizona state court.

The physicians and El Rio filed the instant complaint against HHS and its Secretary in this Court on August 18, 2003, requesting that the Court invalidate HHS's refusal to grant FTCA coverage to the physicians and direct HHS to take appropriate action to notify the Department of Justice that plaintiffs are entitled to FTCA coverage. Their summary judgment motion and the government's cross-motion are now before the Court.

## LEGAL ANALYSIS

The issues raised by the parties present narrow questions of law appropriate for summary judgment. As a threshold matter, the government challenges the Court's jurisdiction over plaintiffs' claim. It contends that it is "well-settled that the APA is not an implied grant of subject matter jurisdiction permitting review of agency action," and thus, plaintiffs must establish an independent source of federal question jurisdiction. (Cross-mot. at 10 (citing *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).) The government argues that no independent jurisdiction ex-

---

1. The Act allows for the removal of cases when the Attorney General fails to appear in state court within fifteen days of being notified of the state court filing to advise whether HHS has determined the FTCA coverage issue. *See* 42 U.S.C. §§ 233(*l*)(1)-(2). The At-

torney General failed to appear in this instance.

2. El Rio and the physicians filed an appeal of the June 5 ruling, but on August 21, 2003, that appeal was voluntarily dismissed as well.

ists, because "HHS's negative 'deeming' determination [does] not create federal question jurisdiction." (*Id.* at 11 (citing *Allen v. Christenberry*, 327 F.3d 1290 (11th Cir.2003)).)

Addressing the merits of plaintiffs' claim that they should receive FTCA coverage under the Act, the government asks the Court to construe the relevant portions of the FSHCAA narrowly, limiting FTCA coverage only to individuals who contract directly with health clinics. It contends that HHS's denial of coverage to the physicians, who have contracted with El Rio "not in their individual capacities, but through a separate and distinct corporate entity," was not arbitrary and capricious, and should be upheld. (*Id.* at 14, 17.)

## I. JURISDICTION

■ The government's challenges to the Court's jurisdiction are misguided. There is a presumption in favor of reviewability under the APA, *see, e.g., Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and thus, "[e]ven though the APA itself technically grants no jurisdiction, power to review *any* agency action exists under 28 U.S.C. § 1331." *Robbins v. Reagan*, 780 F.2d 37, 42–43 (D.C.Cir.1985) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 966 n. 30 (D.C.Cir. 1982)).

■ This Circuit has discussed how the holding in *Sanders*, upon which defendants rely, "does not inexorably lead to the conclusion" that the Court has no basis for jurisdiction over APA claims, but instead has been limited to its facts. *Robbins*, 780 F.2d at 42. It is now well-established that *Sanders* bars a district court's jurisdiction over an APA challenge to federal agency action *only* when a federal statute specifi-

cally precludes review. *Id.See also Ass'n of Nat'l Advertisers v. FTC*, 617 F.2d 611, 619 (D.C.Cir.1979) ("[g]eneral federal question jurisdiction ... gives the district courts the power to review agency action absent a preclusion of review statute"). No statutory provision precludes APA review of the HHS determination at issue here. *See Fox Television Stations, Inc. v. F.C.C.*, 280 F.3d 1027, 1038 (D.C.Cir.2002) (citing *Abbott Labs.*, 387 U.S. at 141, 87 S.Ct. 1507 ("clear and convincing evidence" of congressional intent is required to foreclose judicial review)). Thus, the Court has jurisdiction over plaintiffs' APA claim.

Second, the government's reliance on the *Allen* case is inapposite. In *Allen*, the Eleventh Circuit concluded that HHS's determination that a physician was not covered under the FTCA did not create federal question jurisdiction over the *underlying malpractice claim* between the injured plaintiff and the physician defendant. 327 F.3d at 1295–96. There, because HHS had determined, prior to removal, that the doctors were not covered, the doctors had no basis to remove the case to federal court.[3] *Id.* Therefore, *Allen's* procedural posture rendered the HHS determination a "tangential federal issue" that could not transform the action "into a federal case where the rights involved [were] rooted in state law." *Robbins*, 780 F.2d at 43. Here, by contrast, plaintiffs have sued the agency directly challenging its decision. Their APA claim is the kind of federal question essential to federal jurisdiction. *See id.*

## II. THE FSHCAA

### A. Relevant Law

The Act defines a Public Health Service employee, eligible for FTCA coverage, to

---

**3.** In *Allen*, removal was found to be improper because the Attorney General appeared in state court within fifteen days of being notified of the state court filing, and the HHS determined that the physicians were not employees for FTCA purposes. *See id.* at 1295; 42 U.S.C. §§ 233(c), (*l*)(1)-(2).

include "an entity [that is a public or non-profit entity receiving federal funds under 42 U.S.C. § 254b], and any officer, governing board member, or employee of such an entity, *and any contractor of such an entity who is a physician or other licensed or certified health care practitioner (subject to paragraph (5))*." 42 U.S.C. § 233(g)(1)(A) (emphasis added). Paragraph (5) states:

an individual may be considered a contractor of an entity . . . only if—

(A) the individual normally performs on average at least 32 ½ hours of service per week for the entity for the period of the contract; or

(B) in the case of an individual who normally performs an average of less than 32½ hours of services per week for the entity for the period of the contract, the individual is a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology.

42 U.S.C. § 233(g)(5). In order to be "deemed" covered under the FTCA, the Act requires an "entity or an officer, governing board member, employee, or contractor of the entity" to submit an application to HHS containing "detailed information, along with supporting documentation, to verify that the entity, and the officer, governing board member, employee, or contractor of the entity, as the case may be, meets the requirements" governing individual coverage. 42 U.S.C. § 233(g)(1)(D). The Act also provides that HHS "shall make a determination of whether an entity or an officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this ·section within 30 days after the receipt of an application." 42 U.S.C. § 233(g)(1)(E).[4] Once the determination is made, it "shall be final and binding upon [HHS] and the Attorney General and other parties to any civil action or proceeding."· 42 U.S.C. § 233(g)(1)(F).

The FSHCAA was passed in an effort to "eliminate the expense borne by federally funded health centers for medical malpractice insurance, enabling the clinics to funnel more federal dollars into patient care." *Cruz v. United States*, 70 F.Supp.2d 1290, 1292 (S.D.Fla.1998) (citing H.R.Rep. No. 104–398 (1995)); *see also* H.R.Rep. No. 102–823(II), at 6 (1992) (FTCA coverage was extended to allow federally funded health centers to "redirect funds now spent on malpractice insurance premiums toward improving or expanding their services to their target populations"). As reflected in the statute, the benefits were intended to extend to employed physicians, · as· well as "other health care practitioners either directly or on a contract basis." H.R.Rep. No. 104–398, at 5.

4.  HHS's practice, however, is to only provide coverage determinations within thirty days of receipt of applications from health centers. "[C]overage determinations for individuals are not made in advance, but instead, only after a lawsuit is filed against such individual and is reported to HHS." (Pls.' Compl. ¶ 11; Defs.' Answer ¶ 11.) This policy has been published in the Bureau of Primary Health Care Policy Information Notice dated April 12, 1999. (*See* PIN 99–08, §§ XII and XIX.)

This policy is clearly contrary to the statute, which indicates that HHS "shall" make a determination within 30 days of receipt of an application from *anyone*. 42 U.S.C. § 233(g)(1)(E). Though not directly at issue · in this lawsuit, this policy contributed, if not created, the problem plaintiffs now face, and completely undermines the purpose of the Act, since the contractor/physicians cannot know if they are covered until after they are sued, and thus, they proceed at their own risk if they forego obtaining their own malpractice insurance.

The Bureau of Primary Health Care ("BPHC") has issued numerous Policy Information Notices ("PINs") regarding the procedures for obtaining FTCA coverage as a deemed Public Health Service clinic or employee. Many of these PINs address the issue of contractor eligibility. For example, a PIN issued on January 13, 1997 stated that FTCA coverage is extended to "[h]ealth center officers, board members, all employees (full-time and part-time), full-time contractors, and part-time (less than 32½ hours per week) contractors providing family practice, general internal medicine, general pediatrics, or OB/GYN services. In addition, contractors are required to be licensed or certified health care practitioners."[5] (BPHC PIN 97–6.)

The PIN cited in the Gianturco letter denying the physicians FTCA coverage contained a caveat as to the eligibility of contractors that had not previously been included in any publication:

Furthermore, licensed or certified health care practitioner contractors working full-time (i.e., on average at least 32½ hours per week) or part-time providers of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology

are also covered under the FTCA. (Note: for contract providers, the contract must be between the Health Center and the individual provider. All payments for services must be from the Health Center to the individual contract provider. *A contract between a deemed Health Center and a provider's corporation does not confer FTCA coverage on the provider.*)

(BPHC PIN 99–08) (emphasis added). Interestingly, a subsequent PIN did not reiterate this exception, stating only that the Act "provides FTCA coverage for licensed or certified health care practitioner contractors working full-time . . . [and] coverage for part-time licensed or certified health care practitioner contractors providing services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology." (BPHC PIN 2001–11, April 24, 2001.)

## B. Plaintiffs' Contracts

The controversy over plaintiffs' FSHCAA status stems from the fact that the plaintiffs contracted with El Rio through their individual professional corporations instead of as individuals.[6] The

---

5. A Program Assistance Letter issued by BPHC on February 9, 1996, contains similar language, extending coverage to "full-time contractors" and "part-time contractors . . . in the fields of general internal medicine, family practice, and pediatric services in addition to obstetrical and gynecological services." (BPHC PIN 96–10.) The June 20, 1996 letter from HHS to El Rio "deeming" it a Public Health Service clinic for FTCA purposes likewise indicated that the FTCA coverage extended to El Rio and its "officers, governing board members, employees, and contractors who are physicians or other licensed or certified health care practitioners working full-time (minimum 32.5 hours per week) or part time providing family practice, general internal medicine, general pediatrics, or obstetrical/gynecological services."

6. Plaintiffs have provided copies of the contracts between El Rio and the professional corporations of Drs. Jose Rios, J. Manuel Arreguin, Gerardo Carlos, and Steven Rosenfeld that were effective from January 1, 1999 through December 31, 1999, and the contract between El Rio and the professional corporation of Dr. Jaime Ledesma that was effective from September 1, 2000 through August 31, 2001. Although none of these contracts was effective during the commission of the alleged malpractice, defendants do not dispute that at "all times relevant to FTCA coverage in this case, all plaintiff-physicians were under contract to El Rio to provide services to El Rio patients" (Pls.' Statement of Facts ¶ 2), nor do they dispute that the contracts provided by plaintiffs were in effect during the relevant time periods.

contract between El Rio and plaintiff Gerardo Carlos, for example, states:

> This Agreement for Management and Medical Services (the "Agreement") is made effective as of this 1st day of January, 1999, by and between EL RIO SANTA CRUZ NEIGHBORHOOD HEALTH CENTER, INC., an Arizona non-profit corporation ("El Rio") and Gerardo Carlos, M.D., P.C., an Arizona professional corporation ("Contractor").

The contract further states that "El Rio desires that Contractor provide professional medical services to Patients referred by El Rio," "Contractor ·desires that its principal, Gerardo Carlos, M.D. ("Practitioner") perform gynecological services for Patients referred by El Rio," and "Practitioner is a gynecologist licensed to practice in the State of Arizona, employed by Contractor." [7] The contract is signed by the individual physician as "President" of the contracting corporation.

Each contract is also accompanied by a Guarantee that provides:

> The undersigned hereby accepts and agrees to perform and be bound by the terms and conditions of the Agreement for Management of Medical Services made on March 22, 1999, by and between El Rio Santa Cruz Neighborhood Center, Inc., an Arizona non-profit corporation and Gerardo Carlos, M.D., P.C., an Arizona corporation, and guarantees the performance by the Contractor of the terms and conditions thereof.

The guarantees are signed by each individual practitioner.

### C.   Reach of Section 233(g)

█   Plaintiffs argue that the Act's coverage provisions are ambiguous with regards to physicians like plaintiffs who have contracted with clinics through third-party corporations, and urge the Court to apply contract law to construe the statute broadly in favor of coverage. They contend that every HHS publication besides PIN 99–08, including the letter ·of coverage El Rio received from HHS, is "unequivocal in its coverage of full-time contractors," and thus,· any "reasonable person would have been ·taken by complete surprise" by the Gianturco letter denying coverage because of an intermediary contracting corporation. (Pls.' Mot. at 9, 11.) They point to the stated purpose of the Act as a compelling reason to .construe . the statute broadly.

The government counters that FSHCAA coverage is an expansion of its waiver of sovereign immunity, and thus, should be strictly construed. (Cross-mot. at 13, 15 (citing *Dedrick v. Youngblood*, 200 F.3d 744, 746 (11th Cir.2000) ("the inclusion of contractor liability serves as an expanded waiver of sovereign immunity")).) They contend that corporation contractors are not eligible for ·coverage because the statute states that "an *individual* may be considered a contractor of an entity ..." for FTCA coverage purposes. (*Id.* at 14 (citing 42 U.S.C. § 233(g)(5)(A)-(B)) (emphasis added).)

Consistent with the government's position here, the Eleventh Circuit has narrowly construed § 233(g) to require that a covered contractor be an "individual" who contracts with an entity, holding that a doctor. who provided services to an FSHCAA-eligible clinic through an employment contract he had with a separate foundation was not qualified under the Act because he never contracted directly with

---

7. Each contract contains these identical terms. The contracts also include provisions requiring El Rio to "obtain professional malpractice liability insurance under the FTCA," and the contractors to pay to El Rio "an amount equivalent to the fair value of Contractor's FTCA malpractice insurance."

the clinic.[8] *Dedrick*, 200 F.3d at 747. "We interpret the personal pronoun 'who' as identifying only individual physicians who contract with eligible entities, not organizations or foundations who contract with eligible entities." *Id.* at 746. The Eleventh Circuit, however, specifically declined to address the situation here— "whether an individual doctor who contracts with an eligible entity through his professional corporation would be protected." *Id.* at 747 n. 4.

Other courts faced with a physician claiming entitlement to FTCA coverage have likewise refused to afford coverage when the doctor has no direct contract with the eligible health center but instead provides services through an agreement with a separate entity that has contracted with the center. In *Cruz*, 70 F.Supp.2d at 1290, the physician was an employee of a Public Health Trust that contracted with the clinic.[9] The court held that "a qualified individual first must have contracted with a covered entity. Dr. Soto never contracted with [the clinic] .... Accordingly, there is no basis for a finding of a contractor relationship" or FSHCAA coverage. *Id.* at 1296. Similarly, the doctors in *Del Valle v. Sanchez*, 170 F.Supp.2d 1254 (S.D.Fla.2001), were incorporated amongst themselves into a professional association that entered into a contract with a clinic. Although two out of the three individual physician defendants were sig-

natories to the association's agreement with the clinic, the court recognized the professional association as a legal entity separate from the persons comprising it, holding that "all three doctors were acting as employees of the professional association" and were thus not covered by the Act. *Id.* at 1270–71. As in *Dedrick*, the court specially noted that it was not deciding the issue presented here, *i.e.*, whether a physician who is "sole shareholder and employee of the corporation" would properly be afforded FTCA coverage. *Id.* at 1271.

In the one decided case where the physician *was* the sole shareholder and employee of the corporation that entered into the contract with the eligible clinic, the court held that FTCA coverage of the physician was proper under the Act. *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 165 F.Supp.2d 768 (N.D.Ill.2001). As here, in *Alexander* there was no direct employment agreement between the health center and the doctor individually. The court distinguished its facts from those in *Dedrick*, finding that the contract between the doctor's eponymous corporation and the clinic "is essentially an employment contract." *Id.* at 772.

> Unlike [the doctor in *Dedrick*], Dr. Onyema did not perform the relevant medical services under a contract signed by a third party practice group or clinic by which he was otherwise employed.

---

**8.** The physician seeking FTCA coverage in *Dedrick* had an employment contract with an entity called the "Capstone Foundation," which in turn entered into a provider agreement with the health center at which the alleged malpractice occurred. *Id.* at 745. The physician also provided health services at other clinics through his affiliation with Capstone. *Id.* Both the contract between the physician and Capstone and the contract between Capstone and the clinic provided that Capstone would maintain malpractice insurance for its employees. *Id.*

**9.** The agreement between the physician and the Trust said that he was to perform medical services "in accordance with ... Trust personnel policies," "under the control and direction of the Trust," and "as the employee of the Trust," where the Trust retained "the exclusive right to hire, assign, schedule and/or discipline and other otherwise determine the staff privileges and terms of employment of Physician while in the employ of the Trust." *Id.* at 1293–94.

Dr. Onyema performed services for Sinai under a contract *he himself* signed on behalf of an eponymous professional corporation he founded and of which he is the sole shareholder and employee .... This evidence leads us to the conclusion that Onyema Medical Service has essentially acted as Dr. Onyema's alter ego with respect to his professional services relationship with Sinai.

*Id.* The court therefore concluded that the physician was covered under the FTCA, recognizing that to ignore the fact that the corporation was merely the doctor's alter ego would contravene the notion that "the substance of the relationship overrides its form." *Id.*

*Alexander*'s reasoning is persuasive, and applies to the facts before the Court. There is nothing to suggest that the physicians here were acting as employees of a distinct entity that in turn contracted with the clinic, as in *Dedrick, Cruz,* or *Del Valle.*[10] By concluding that the solely-owned eponymous corporations functioned as mere alter egos, the Court need not decide whether § 233(g) should be interpreted to encompass contractors who have not contracted directly with health centers. As in *Alexander,* plaintiffs' contracts are essentially between El Rio and each of them individually, and FTCA coverage is appropriate.

**D. APA Review**

▮ The Court need not rely on *Alexander,* however, to conclude that HHS's decision to deny plaintiffs FTCA coverage violates the APA, for the facts here are even more compelling than in *Alexander.* Under the APA, the Court must uphold the agency's decision unless it is "arbitrary, capricious, an abuse of discretion," "otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706. It is well-established that, when conducting review under the "arbitrary and capricious" standard, the Court may not substitute its judgment for that of agency officials. *Sloan v. Dep't of Housing & Urban Dev.,* 231 F.3d 10, 15 (D.C.Cir.2000). Deference to agency decisionmaking, however, does not require the Court to accept an agency's failure to consider relevant factors or accept its clear errors of judgment.[11] *Id.* (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Rather, the focus is on whether the agency has examined the relevant facts and has articulated a satisfactory explanation for its decision that reflects a "rational connection between the facts found and the choice made." *Lozowski v. Mineta,* 292 F.3d 840, 845 (D.C.Cir.2002) (citing *Motor Vehicle Mfrs.,* 463 U.S. at 43, 103 S.Ct. 2856); *see also Tourus Records, Inc. v. Drug Enforcement Admin.,* 259 F.3d 731, 736 (D.C.Cir.2001).

▮ Here, the agency's decision does not pass muster under the APA for two independent reasons. First, the Gianturco letter reflects the agency's failure to

---

10. Although defendants point out that plaintiffs have an agreement amongst themselves as "El Rio OB/GYN Associates," plaintiffs did not contract with El Rio through this entity, and the agreement addresses primarily shared on-call and relief responsibilities.

11. Moreover, as both parties agree, the agency's decision presented in the Gianturco letter is not entitled to deference under *Chevron*

*U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), but only "claim[s] respect according to its persuasiveness." *Public Citizen, Inc. v. U.S. Dept. of Health and Human Serv.,* 332 F.3d 654, 660 (D.C.Cir.2003) (quoting *United States v. Mead Corp.,* 533 U.S. 218, 221, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)).

examine the relevant facts before it. As noted above, each contract between El Rio and the physician's corporation was executed with a Guarantee, signed by the individual physician. Under Arizona law, "[a] guaranty is a collateral promise by one person to answer for the payment of some debt or the performance of some duty in case of the default of a third party who, in the first instance, is liable for such payment or performance." *Dykes v. Clem Lumber Co.*, 58 Ariz. 176, 118 P.2d 454, 455 (1941). A guaranty contract is separately enforceable, and may even provide for greater liability than that of the principal contract's promisee. *See Provident Nat'l Assurance Co. v. Sbrocca*, 180 Ariz. 464, 885 P.2d 152, 154 (1994). The nature and extent of a guarantor's liability depends upon the terms of the guaranty contract, and, as with any question of contract interpretation, the Court's goal is to effectuate the parties' intent, giving effect to the contract in its entirety. *Id.* at 153–55; *see also Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, 52 P.3d 786, 788 (2002).

By executing a binding Guarantee, each physician expressly assumed the separately enforceable obligation to personally perform services for El Rio. The Guarantee functions as direct contract between each physician and the health center, thus fully satisfying HHS's interpretation of § 233(g) as requiring a contractual relationship between the individual health care provider and the clinic. (*See* BPHC PIN 99–08.) The Gianturco letter focuses only upon the fact that the primary contracts were executed by the physicians' professional corporations, and completely neglects to acknowledge or consider the separately signed Guarantees accompanying each contract. It offers no explanation for ignoring these direct contractual obligations assumed by each physician. This failure to examine the relevant facts, or to articulate a satisfactory explanation for its decision despite them, renders the agency's decision to deny plaintiffs coverage based on the nature of their contractual relationship with El Rio arbitrary and capricious.

Second, it is significant that the government took exactly the opposite position in *Alexander* from the one it takes here regarding FTCA coverage of a physician whose eponymous, solely-owned professional corporation has contracted with a federally-funded clinic. As discussed above, the doctor in *Alexander* was, if anything, in an even less convincing situation than plaintiffs are here given the Guarantees. Nevertheless, the government in *Alexander* removed the action to federal court based on its determination that the doctor was *covered* by the FTCA and then moved to dismiss the suit because the malpractice plaintiff had failed to exhaust FTCA prerequisites. *See* 165 F.Supp.2d at 770.

It is axiomatic that "an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C.Cir.1996); *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C.Cir.1996); *Nat'l Ass'n of Broadcasters v. FCC*, 740 F.2d 1190, 1201 (D.C.Cir. 1984) (an agency is bound by its conclusion in a prior instance unless it has provided a reasoned explanation for its departure). HHS's apparently inexplicable inconsistency is sufficient to allow the Court to reverse its coverage determination, for "[i]f an agency treats similarly situated parties differently, its action is arbitrary and capricious in violation of the APA." *Bracco Diagnostics, Inc. v. Shalala*, 963 F.Supp. 20, 27–28 (D.D.C.1997) (citation omitted) (under the APA, an agency needs to either provide a rational basis for treating essen-

tially identical applicants differently, or it must treat them all in the same way). *See also Etelson v. Office of Pers. Mgmt.,* 684 F.2d 918, 926 (D.C.Cir.1982) ("Government is at its most arbitrary when it treats similarly situated people differently."); *Doubleday Broad. Co. v. FCC,* 655 F.2d 417, 423 (D.C.Cir.1981) (by "deciding a case one way today and a substantially similar case another way tomorrow," without a reasonable explanation, the commission has acted arbitrarily and capriciously). In short, under either of the above rationales, the decision of HHS that plaintiffs cannot be deemed federal employees under § 233(g) contravenes the APA's arbitrary and capricious standard.

## CONCLUSION

For the foregoing reasons, the Court reverses the agency's decision presented in the Gianturco letter on the grounds that HHS may not refuse to deem plaintiffs as employees of the Public Health Service on the basis that their contracts were between El Rio and their individual, eponymous professional corporations. The Court will remand this matter to HHS for further proceedings consistent with this Memorandum Opinion.

## *ORDER*

For the reasons provided in the accompanying Memorandum Opinion, it is this 15th day of January, 2004 hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment is **GRANTED** and Defendants' Cross-motion for Summary Judgment is **DENIED**; and it is

**FURTHER ORDERED** that the Complaint is dismissed with prejudice; and it is

**FURTHER ORDERED** that this matter is remanded to the Department of Health and Human Services for further proceedings consistent with the accompanying Memorandum Opinion.

**SO ORDERED.**